MOTION PICTURE PATENTS CO. v. CALEHUFF SUPPLY CO., Inc.

(District Court, E. D. Pennsylvania. January 22, 1918.)

No. 1615.

1. PATENTS ⟜328—VALIDITY—PROJECTING KINETOSCOPE.
     The Latham patent, No. 707,934, for a projecting kinetoscope, claim 7, is for a particular construction, which is wholly the product of mechanical skill, and is void for lack of invention.

2. PATENTS ⟜109—VALIDITY—AMENDED CLAIMS.
     There is no objection to an applicant for a patent acquiescing in a rejection of his broad claims to novelty and being allowed a narrow claim to a specific construction, which was substituted by amendment.

3. PATENTS ⟜109—VALIDITY—AMENDED CLAIMS.
     An applicant may amend his claims to meet the objections of the Patent Office, without a new oath, so long as the amended claims relate to the same claimed invention.

In Equity. Suit by the Motion Picture Patents Company against the Calehuff Supply Company, Incorporated. On final hearing. Decree for defendant.

Cyrus N. Anderson, of Philadelphia, Pa., and Melville Church, of Washington, D. C., for plaintiff.

Oscar W. Jeffery, of New York City, for defendant.

DICKINSON, District Judge. This controversy concerns letters patent No. 707,934, issued to Woodville Latham. This is at least the third attempt to have the validity of this patent determined. It is one generally known as the Latham loop patent. The controversy went off in the Independent Case, 200 Fed. 411, 118 C. C. A. 563, on the question of whether the patent concerned cameras or projecting machines, and in the Motion Picture Patents Co. v. Universal Co. Case on a question of license. There is no escape from meeting, in the present case, the question of validity. The fact of infringement is squarely admitted. The only claim in issue is the seventh. It is

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

asked that a narrow reading only be given to it, so as to cover a specific construction, the inventive merit of which is claimed to be in the fact that it is the result of a novel combination producing a new and useful result, every element in which combination is admitted (at least arguendo) to be old. It is evident that nothing short of identity in construction would demand an admission of infringement. We have the admission none the less. There is no charge or intimation of any ulterior purpose in thus sharply defining the issue, or in this absence of the disposition usually manifested by defendants to wriggle away from a successful charge of infringement. This may be due wholly to the confidence of the defendant in its averment of invalidity. We so interpret what would otherwise be a very accommodating attitude on the part of the defendant.

The defense of invalidity is based upon the proposition that every element of invention has been eliminated from the plaintiff's device, except that which is claimed to reside in the bringing together of features of construction in a combination involving invention. The problem thus presented to the constructor, as is asserted by the defense, is, however, wholly a problem in mechanics, involving no invention, but making its call solely upon the mechanical skill of the designer. It is further asserted to be the fact that the construction in which invention is claimed to reside was the actual production of the skilled mechanic, who was called by Latham to his assistance. What Latham did, it is asserted, was to give to the mechanic the idea of the construction which he wished to have made, and it was constructed for him. Had there been novelty in any of the features to be thus incorporated in the construction, or any novelty in the idea of having the several features in combination, invention would be conceded. When, however, all Latham did was to direct the mechanic to put the described device together, and the only call made upon the mechanic was to select from the storehouse of his mechanical art what was required for the purpose and to make of the construction "a good and workmanlike" job, Latham cannot take out a valid patent covering the particular construction so put together, because (1) there is a total absence of invention, and (2) if there was invention in the mode of construction, it was not the invention of Latham.

Denial of the validity of such a patent is further based upon the averment that the claim to patent of this narrow scope was an afterthought not in the mind of the applicant, but originated with a patent solicitor long after the application was made and after the applicant had assigned his rights to the predecessor of the present plaintiff. The basis of this averment is that the application was filed June 1, 1896, and allowance of this narrow claim not made until August 26, 1902. In the meantime, an interference had blocked the allowance of the claims which incorporated the invention which the applicant thought he had made. The proceedings in the Patent Office resulted adversely to the applicant. This emasculated the application and left the device of the applicant devoid of every element of invention. The solicitor of the assignee of the applicant then amended the claims by inserting the one now in issue, and secured the allowance of it, and the issue of a patent limited to the specific construction described.

The thought behind this defense would compel ready acceptance, except for several facts with which we are confronted, and the significance which is usually imputed to them. In the first place, we have the fact of original construction. The patentee is not asking for much when he asks to have his claimed proprietary right to this specific construction protected. Again, he has the prima facie right imputable to the grant of letters patent. The findings of the examiners in the case of an application which has received real consideration of its claims, particularly if the findings be such as make demands upon the knowledge possessed by experts or those who have technical knowledge, command respect, and may well be accepted as persuasive. Still again, the juridical history of this patent may be thought to carry the implication that its validity has received judicial recognition in fact, although not made in form the subject of a judicial finding. Still yet again, the persistency with which this device has held its place in a rapidly developing art, offering large rewards to any one who had a good substitute to offer, loudly proclaims its worth and value. Whatever impression is made upon the mind by the averments that the device is the product of another than the patentee, and that the making of the claim in issue was an afterthought, is sought to be removed by a denial of their truth.

The fact issues thus raised will be later discussed, but on the whole the showing made by this plaintiff might well support a finding that the prima facie right arising out of the patent had not been overcome. This might well be, or, with the trial judge at least, was, the impression first received. After an analysis of this presentation of the plaintiff's case, this first impression wholly disappears, or is at least dimmed beyond the point of recognition of its presence. This second thought comes with even the most hasty glance over the disclosures of the prior art. Edison is the acknowledged father of the motion picture art. His camera and his means of getting upon the film the pictures to be projected upon the screen are still its basis and its backbone, and no essential advance has been made upon his contribution to the art. He fully and finally met all the conditions of the problem with which he was confronted.

The problem which Latham had before him, and which he supposed he was meeting on virgin ground, presented one condition of difficulty with which Edison was not confronted. This arose out of the increased length of the film. Edison had to do with film rolls from which the film could be directly fed to a position in front of the camera, and kept there for the required interval of time. The inertia and momentum of heavy reels made this impracticable. Latham though he was the first to meet this difficulty by having the supply reel deliver the film, not directly to the feeding mechanism, which carried it to and held it before the window, but delivered it through the medium of an excess of supply which formed a loop, and to have the feeding mechanism get the film from the slack of this loop. In this way all tug upon the supply reel was avoided. A resort to the same method prevented the intake reel from tugging at the film. This and one other feature, of which we next speak, constituted the whole

of the advance upon the prior art, which Latham proposed to himself.

We are, of course, for the present, ignoring the claim of the patent now in issue. So true is that the mechanics, who constructed the Latham device, who were familiar with the construction of the Edison device, followed the construction of the latter so nearly that the latter, viewed as a camera, and not as a projecting machine, was a reproduction of the Edison camera plus the loop feature. In their general purpose cameras and projecting machines are as much like each other as the two ends of a blow pipe. In the one the course of travel is from the object to be pictured to the film, and in the other the impression on the film is thrown upon a screen. There is, however, this difference in the conditions under which they operate. The film will take an impression in much less exposure time than the human eye requires, for it to be impressed with a vision of what is upon the screen. This difference in time may be roughly expressed as 500 to 1. At all events, the difference is very great. It thus becoms apparent that several things are required of successfully operating projecting machines in that part of their construction which we are now considering. These loops must be formed; they must be maintained without variance in quantity of slack; there must be no slip due to lost motion in the movement of the film; the movement of each picture on the film must be kept in step with the halt before the window and the action of the shutter, undisturbed by any shrinkage of the film or other causes of lack of synchronism, and the halt before the window when the shutter is open and the movement of the film when the shutter is closed must be so regulated as that the eye of the spectator will have time to do its work, in accomplishment of which purpose the halt period should exceed the traveling period in time.

Edison met all of these needs, which were his needs, by (among other things) providing perforations or round holes spaced along each edge of the film which met corresponding spuds in his feeding machinery. When the film passed through the projecting machine, a like mechanism would bring and hold the picture in proper position before the window, unaffected by shrinkage in the film, because this would be inappreciable as affecting the space relation between the picture and the perforations, which determined its placement, however apparent the shrinkage might be in the film as a whole.

The new feature of the problem, which was met by introducing the loop, Latham thought was of his devising. The other feature, which brought a problem in optics, he sought to solve in a way which he believed to be his own, and, had he been the first to apply the principle, this feature would unquestionably have involved invention. Prior to his application, he had not thought of the use of a shutter so constructed as that the period of time, at which the film was halted for the illumination and display of the picture, would exceed the intervals of time between the halts. The shutter which he had used gave the lesser period of time to the position of illumination. He reversed this in his application, and it would not be unfair to claim that he appreciated the value of this increase in the period of il-

lumination. His claim of originality in this was, however, rejected in favor of Armat. With this feature eliminated from his claims, and with the loop and all the other elements in his combination admitted to be old, the plaintiff is brought to the position in which the present defendant places the plaintiff. That position is that it has been driven from every tenable ground on which it has sought to defend the validity of this patent, and now seeks to defend it on the untenable ground that it may reassert an exclusive proprietary right to a particular construction which is wholly the product of mechanical skill.

As we understand counsel for plaintiff, it does not shrink from assuming this position, but confidently accepts the issue implied in this denial of invention. This takes out of the case the question of estoppel and of res adjudicata. We do not follow the line of argument which seems to admittedly lead to the conclusion that there is no distinction between the two with respect to the conditions of their application, nor do we accept that conclusion. That a judgment only concludes parties and privies in person or estate is an acceptable proposition, but it apparently has no application to the facts of this case. Nor do we see that either res adjudicata or estoppels are appropriate terms here. The latter is more nearly so than the former. The plaintiff cannot claim here anything, its claim to which was rejected in the Patent Office, for the simple reason that it has no patent upon which to base the claim, and the claims, so far as allowed, must be so read as to make them consistent with the findings upon which other claims were rejected. So far as what are enumerated as facts are facts—including the fact that the Latham patent was heralded as a loop patent, and then this feature abandoned as the supporting base of the claim of validity; the fact that in the application validity was claimed on the feature of relative duration of film movement and rest, and this eliminated by the proceedings in the Patent Office; the fact that "the characterizing difference" which gave inventive novelty to the combination was at one time ascribed to one feature and at another time to another feature—all prepare the mind (as the taking of inconsistent positions always does) for the ready reception of the thought that the most recent position taken is the product of an afterthought, and because of this is likely to be as untenable as each of those previously taken.

Neither these facts nor any of them invoke the application of the res adjudicata doctrine (except to the extent that the applicant is concluded by the ruling denying any of his claims to be patentable), nor do any of them suggest estoppel in the sense of any accurate use of that term. Their effect is psychological, rather than legal. They do have, however, an effect none the less real. This brings into consideration the other fact that all projecting machines in use embody the essential combination which plaintiff claims as its exclusive property. This loudly proclaims utility. Indeed, this is properly found as against this defendant from the fact of infringement alone. It may be, and such use usually is, evidence of inventive novelty; but the latter finding is not necessarily required to be made.

The juridical history of the Latham patent disclosing, as it does, the failure of attempt after attempt to establish its validity, coupled with the fact of its open infringement by many users, provokes the comment made by a witness in another case that any claim of exclusive right under it was a joke, and turns the argument, to be drawn from general use, against it. This is true, without crediting the suspicion that the Joly patent afforded a reason for the employment of the tactics to which the plaintiff resorted, by seeking to prefer the Latham to the Armat patent, because the former preceded Joly and the latter did not.

[2] In this connection, consideration may be given to two other facts in redemption of the promise made to refer to them. One is, upon which some stress is laid, that the mechanic whom Latham called to his aid, and not Latham, was the inventor of the combination which is claimed under the Latham patent. This may be the real fact, but there is nothing on which to base such a finding in face of the prima facie validity of the grant to Latham. The other is that the present claim 7 was inserted in the application after its filing, and so framed as to read upon the machines which came to the knowledge of Latham after his application had been filed.

We are not in accord with the thought advanced by either the plaintiff or defendant with respect to this feature of the case. We do not see that the plaintiff is confronted by the horns of the dilemma upon which the defendant seeks to impale it. It does not follow that claim 7 must either have been in the original application, and to be considered as rejected, or not have been in it, and to be without a supporting oath. We see no objection to the applicant acquiescing in a rejection of his broad claims to novelty, and being allowed a narrow claim to a specific construction, which was substituted by amendment.

The true ground of objection is that voiced by Judge Hand in the Independent Case. The point he made was that, if neither the original application nor any of its claims referred to a camera, no camera construction would infringe the patent, and, on the other hand, that if the application and its claims were so changed as to refer to the invention of a camera (to which invention no reference had before been made), the claim to the invention of a camera would be a claim to a new invention, requiring a supporting oath. The change made here in the claims resulted, not in the claim to a new invention, but in the restriction of the claim from a broad one, which could not be allowed, to a narrow one, which was allowed. We do not see that plaintiff is bound to find in his original claims one which is substantially the same as his amended claim, if, as we find, his original application did cover his amended claim, in the sense that it included that claim and more.

[3] We further do not see, however, that claim (13) 6 is the same as the present 7. The former included the thought of "illumination and rest" as a characteristic feature. Why otherwise the emphasis upon broken gearing? This element in the combination was awarded to Armat and properly dropped from claim 7. What we do find is that, if claim 7 had originally accompanied the Latham application, it would have been germane and (if there was no other reason for

rejection) would have been allowed, and that in consequence we see no objection to its introduction by amendment. This means no more than that an applicant may amend his claims to meet the objections of the Patent Office (without a new oath), so long as the amended claims relate to the same claimed invention as the application, and do not lay claim to a new invention.

We would have more confidence in the soundness of the conclusion, to which we have arrived, if counsel for defendant had specifically planted the defense upon the ground upon which we are led to place it. It was so planted (inter alia) in the oral argument, and may be found embraced in the argument advanced in the printed brief submitted; but it is not in the latter as strongly emphasized, or at least given the importance, and surely not the controlling effect which we ascribe to it. Besides this, as already stated, there is much in the plaintiff's case to incline the judgment in its favor. The argument of counsel for plaintiff is very persuasive, even if not convincing, and the testimony of Mr. Marvin is so admirably put in form and clearness as to be very appealing. There is room, also, for the thought that, had the infringing machine in the Independent Case been a projecting kinetoscope, instead of a camera, Judge Hand would not have dismissed the bill, and there is room for a like thought in the Universal Case, if there had been an absence of the license feature. This, of course, does not necessarily follow; but there is significance in the fact that in each of these cases the defense avoided resting the defense wholly upon, and did not secure a ruling of, the invalidity of the patent.

The very illuminating dissenting opinion of Judge Coxe leaves room for no other thought than that, as the Independent's defense had been presented, he was convinced of the plaintiff's right to a decree of validity. Had there been, however, in that case, as here, an entire absence from the plaintiff's case of those features upon which Judge Coxe placed emphasis, we do not know what would have been his view.

We would hesitate long before we would have sufficient confidence in the soundness of a conclusion, which differed from any of those indicated, to announce it. No trier of causes can, however, escape the duty of frankly avowing the conviction which has settled down upon his mind and pronouncing the judgment to which it leads. He may express his views with the diffidence which the occasion demands, but he must nevertheless express them, and they must be his. He cannot surrender his convictions in deference to the views of others, unless he had been persuaded out of his convictions, or the views of others are authoritative, or otherwise controlling. If the present case had been presented as the Independent Case appeared to Judge Coxe, we could see no escape from the conclusion reached by him. When, however, we have out of the case every element of invention, except such as is claimed to reside in a particular mechanical construction, we can see no invention in the selection of well-known mechanical means to secure the result desired.

To paraphrase the language of the seventh claim, if we assume to have described the idea of feeding the film, including the loop feature,

of intermittently feeding it so as to get an interval of pause in front of the window sufficiently long to supply the required degree of illumination, and of taking in and reeling up the film after the picture had been shown, so as to avoid strains, just as when it was fed, together with all the ideas which are involved in a successful operation, it would seem that we had the essentials of the invented thing described. Any one not a mechanic, who had such an invention in mind, might describe it to a mechanic to be constructed; and if we add to the knowledge of this invention that every mechanical element which could enter into the construction (each and every physical part of its construction) was something known to every mechanic, how could there be said to be any invention in the form of construction adopted? As means of feeding and retiring the film, beaters, friction rollers, claws, hooks, holes, and no holes, sprocket wheels, etc., were all open to him from which to make his choice and selection. One mechanic might select one means; another mechanic might give the preference to another means. The fact that the group of mechanical appliances which one employed might make a more efficient embodiment of the thing meant to be constructed than the grouping as made by another would surely not confer the rewards due to invention upon either. To hold otherwise would seem to put it in the power of any constructor of a machine to forestall the inventor.

Granted that Edison had an equal right with Latham to employ the loop, and that, with the loop feature added, the Edison machine is identical with the Latham machine, how can Latham be given a patent on his particular construction without making Edison an infringer, if he added loop; and how could he be an infringer, because of the construction features of his machine, when in these respects the Latham machine was a copy of the Edison? We thus feel driven to the conclusion that the Latham patent is invalid for want of invention, so far as claim 7 is involved, and that the bill of complaint should be dismissed, with costs.

Reluctance to reach a conclusion different from that reached by the experts of the Patent Office, after all the consideration which they gave to this application, or to even seem to differ with those who have had this patent under judicial consideration, has led us into this overlong statement of the view entertained and discussion of the point upon which it is ruled.