## EDMANDS v. PERLMAN.

(District Court, E. D. Pennsylvania. January 25, 1918.)

### No. 1667.

1. PATENTS &#8658;328—INFRINGEMENT—ELECTRICAL SURGICAL BAKER.

The Edmands and Hoyt patent, No. 775,105, for an improvement in electrical surgical bakers, as limited by the claims as finally allowed by the Patent Office, covers only the specific construction described, which is a unitary structure consisting of two sections, each in the form of the segment of a circle and united by a hinge at their upper ends, and is

not infringed by a structure comprising three sections, united by two hinges.

2. PATENTS ☞240—INFRINGEMENT—IMPROVER OF PATENTED DEVICE.

A second inventor may invent an improvement on a patented device, and secure a patent upon his improvement; but he has thereby by no means transferred the ownership of the device first patented to himself, but is an infringer if he uses it without authority.

In Equity. Suit by Alberta F. Edmands against Henry Perlman, doing business as the Crown Electric Hot Pack Company. On final hearing. Decree for defendant.

Monroe Buckley, of Philadelphia, Pa., and George P. Dike, of Boston, Mass., for plaintiff.

Daniel J. McBride, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. [1] The question really involved in this proceeding is one of infringement. This, at least, is the only question which need be considered. It, however, turns upon the scope of plaintiff's claims. The patent with which we are concerned was issued to Walter S. Edmands and Charles A. Hoyt, and bears the number 755,105. It relates to a claimed improvement in electrical surgical bakers. A very general statement of the thought which prompted the suggestion of the plaintiff's device is that it was to have some convenient means of subjecting the human body to the influence of light and heat electrically generated. Claims 1 and 3 are in issue. It is to be observed that the claim is for an improvement.

The substantial thought advanced on behalf of the plaintiff is that the claims of the patent are to be read in the light of the prior art. The prior art supplied only wholly dissevered sections which might be brought into proximity to the parts of the body to be subjected to electrical light and heat rays, and be supported in such position by a rack or stand, or other like contrivance.

The patentees conceived the idea of making a unitary structure of the two sections, by uniting them by means of a hinge, thus securing adjustability of position and having means for preserving the position chosen. The patentees embodied this idea in a structure which is composed of two rounded sections, containing groups of incandescent lamps; each section being the segment of a circle, the arc of which measures about 45 degrees. The two sections are connected together at "the upper ends thereof" by means of a hinge. The sections are capable of forming, when together, substantially a half circle, the diameter of which may be increased or diminished by the operation of a hinge. This, of course, causes the shape of the unitary structure to depart somewhat from the circular form; but the general idea of the device may be gathered from the above description.

There is implied in this thought of the plaintiff the right of the patentees to have made claim to the whole of the advancement on the prior art involved in the idea of making, by means of a connecting hinge or hinges, one unitary structure out of what was before two disconnected structures.

The proposition of the defendant is that there is no call to discuss what the patentees might have claimed, and no aid rendered the plaintiff by an examination into the conditions of the file wrapper to learn what in fact was at first claimed. The file wrapper discloses that all the claims of the application were refused because of prior art reference, and that the patent which did issue was a patent charged with the limitations set forth in the claims which were finally allowed, with the first and third of which we are now concerned. These claims, as defendant reads them, each limit the patentees to a structure made up of two sections, having a single hinge at what may be termed the top of the structure, or what the claims themselves define as the upper ends of the sections.

The defendant's structure has two hinges, and while in a sense these hinges are at the upper ends of the sections respectively, they are not at the upper ends of the sections in the sense in which those terms are employed in the claims. The defendant has, as has been stated, two hinges positioned at the extremities of what may be called a yoke. More accurately described, the plaintiff's structure is a unitary structure, composed of two sections joined together by means of a hinge at the upper ends of the sections; while the structure of the defendant is a like unitary structure, composed of three sections hinged together in the two places at which the ends of the top section respectively meet the other sections.

The situation with which the plaintiff is thus confronted is in consequence this: The patentees, as the price of securing the grant of the patent, limited the patented device to a structure having two sections and having one hinge at the top. This limitation they, therefore, must observe, and in the light of this limitation the defendant's structure does not infringe.

Some confirmation is given to this by the fact that the defendant's structure is made under the protection of a patent granted to him. We say this, mindful of the truth that the grant of the second patent by no means necessarily implies the absence of infringement of a prior patent in the use of the second device, as it may be merely the grant of a patent on a novel feature added to an existing patented device. A finding of the validity of such second patent might, of course, be wholly consistent with the like finding of the validity of the former patent, as it would involve no right of the second patentee to anything more than the exclusive right to the specific structure which embodied the improvement which the second patentee had invented. None the less there is significance in the grant of the second patent, because it is at least suggestive of the thought that the first patent was also limited to a specific structure. This suggestion presents the point of the decision to be now made. It is brought out in a series of questions: Did the thought of having the separate structures made one, by uniting them by means of a hinge, originate with the first patentees? Is there invention in such a thought? If so, did the patentees disclose and make claim to this invention? Again, if so, did they, as the cost of securing the patent which was granted, recede from this claim and ac-

cept a patent based upon the narrower claim to a specific structure having one hinge "at the top"?

If the claims which were allowed are read with the thought in mind of holding the patentee to verbal accuracy, the claims must be read as claiming only a right to the last-mentioned specific structure. Should they be so read? The answer must be found in the prior state of the art, the file wrapper experience of this application, and the reception given to the device first patented. The original application made the broad claim now sought to be upheld. Page 10 of the exemplification of the file wrapper discloses this purpose, as well as other parts of the application, and the claims as originally formulated. This application was rejected on all its claims as showing nothing patentable over the Gohlin patent. The application and its claims were then bodily withdrawn, and a second application, with new claims, was substituted. Invention is ascribed to the device as "a compact and simple apparatus" adapted to produce better results than theretofore attained.

There is a suggestion of a broader claim than the "two section, one hinge" type by the statement that "the construction and the precise means of connecting and adjusting the parts or sections of the apparatus may vary more or less in practice"; but this may also be read as referring to variations in the construction of "two section" bakers, which is the mode of construction indicated throughout the application. The claims, however, clearly read broadly enough to include other than "two section" bakers.

All the claims were again rejected on references, again including Gohlin, in the light of the Greville patent. This rejection was met by inserting other claims which may be read as referring to "two section" bakers, and the applicant declares his intention to be "to restrict the case to the construction which is shown" in the five drawings left in the application. The drawings depict a "two section" baker. The natural inference is that the claims were restricted to the "two section" type. This was the impression received at the trial and remained undisturbed by the oral argument. Leave was, however, given to submit briefs, and the very clear and forceful argument outlined in the brief of counsel for plaintiff did very much to remove the impression before received. In fact, during the perusal it changed it. When analyzed, however, the argument seems to prove either nothing at all or too much.

The respective structures of plaintiff and defendant are not only very much alike, but they are in creative idea, function, and substantial design the same. They differ only in the form and make of their mechanical construction, plus whatever inventive idea there may be in connecting the two side sections together by a simple hinge or by a yoke with two hinges. We think counsel from his viewpoint has fairly characterized the Perlman device as a species of the Edward's genus. The former, however, is a variety rather than a species. This is because, if the plaintiff's patent covers the inventive thought of bringing the sections together, it is a variation in mechanical form only to vary the form of the hinge.

[2] We think counsel right, also, in his proposition that a second inventor may invent an improvement upon a patented device and secure a patent upon his improvement; but he has thereby by no means transferred the ownership of the device first patented to himself. He is, of course, an infringer if he, without authority, uses the device first patented, and he is no less an infringer because he mixes his own patented improvement with it.

One proposition advanced by the argument is that the plaintiff was the inventor of a baker which was an embodiment of the broad thought of a unitary structure, the sections of which were united by a hinge, and that the defendant is making this very thing. The inference sought to be drawn is that the plaintiff has the exclusive right to the thing thus invented and that defendant has infringed. In this phase of it the argument, as we have said, proves nothing, because the fact that an inventor had the right to a patent does not of itself prove that he either claimed or was granted it. The argument, therefore, assumes the very thing to be proven. The argument in the phase of the effect of the grant of the second patent, as we have said, proves too much. It is that the patents are each and both valid. The concession of the validity of the second patent would seem to involve either the same assumption of the broad scope of the first patent or a denial of infringement. This is because the second device can escape the charge of infringing the first patent only by each being limited to a particular structure.

Under the facts of this case the second device is not a patentable improvement ingrafted upon a patented previous device. Unless the first patent is limited to a special construction, the second device is an infringement, because it is in the patentable sense the same invention. If, in the inventive sense, the two devices are the same, how can the second be patentable? To concede validity to the second patent is therefore, as has been said, to concede that the two devices are not the same, and this can be true only if each patent is limited to its own particular form, in which event there is no infringement. The assertion that the second patent is valid, because its device is an improved form of that of the first patent, does not advance, but destroys the effect of, the argument, because it concedes the first to be limited to the form of the construction, as otherwise there would be no novelty in the second.

The whole discussion comes back, therefore, to the finding of whether the patented device of the plaintiff is a baker made in any unitary form by means of its sections being hinged together, or whether it is a baker made in the special form of two sections hinged together at the top, plus the finding of whether the defendant's baker is of this same particular construction. The latter undoubtedly is a unitary baker made up of sections hinged together at the top. It differs from that of the plaintiff only in the form of its construction. If there is infringement, the defendant's possesses no patentability. The converse, in this particular case, seems equally true. If the defendant's baker is patentable, it was not anticipated by the plaintiff's baker, and no infringement can be found.

The view taken is, of course, from the standpoint of an acceptance of the findings of the Patent Office, and that both of these patents are in evidence. Counsel have so treated the case in the argument, and we accept this as the admission of the respective parties. It always seems an ungracious thing to refuse to find infringement merely because the claims of a patent are less broad than the deserts of the patentee. Whether such be the case here we have not considered. If such be the case, the legal consequences must be accepted. In the first place, a plaintiff in a patent case has only the rights which his letters patent have conferred upon him. All beyond this he has given to the public. In the second case, no patentee can ask to be permitted to invite others to use that the exclusive right to which he has disclaimed, and then ask to monopolize the market thus created. This has been made so clear by Judge Hand, in Motion Pictures Case, 200 Fed. at pages 412 and 413, 118 C. C. A. 563, that further expression is forestalled.

This takes all value from that part of plaintiff's argument which is built upon the fact of public recognition of merit in these devices. So far as merit is ascribable to the particular construction, which plaintiff has patented, the rewards of this belong to him. So far as merit is ascribable to the particular construction which defendant has patented, the fruits of this cannot be taken from him without giving to the patent of plaintiff a reading which would deny validity to the defendant's patent. This we decline to do.

The bill of complaint is dismissed for want of equity because the proofs fail to show the fact of infringement, and a decree dismissing the bill, with costs to defendant, may be submitted.