MOTION PICTURE PATENTS CO. v. CALEHUFF SUPPLY CO., Inc.

(Circuit Court of Appeals, Third Circuit. June 13, 1918.)

No. 2360.

1. PATENTS ⬸328—VALIDITY—PROJECTING KINETOSCOPE.
     The Latham patent, No. 707,934, for a projecting kinetoscope, claim 7, employing a device taken from the prior art without developing any new functions, is invalid for want of patentable invention.

2. PATENTS ⬸41—VALIDITY—COMBINATION OF ELEMENTS.
     If invention is wholly lacking, a patent cannot be sustained, even for the specific combination of specifically contrived elements.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity for infringement by the Motion Picture Patents Company against the Calehuff Supply Company, Incorporated. From a decree (248 Fed. 724) dismissing the bill on final hearing, plaintiff appeals. Affirmed.

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Melville Church, of Washington, D. C., George F. Scull, of New York City, and Cyrus N. Anderson, of Philadelphia, Pa., for appellant.

Ladner & Ladner, of Philadelphia, Pa. (Oscar W. Jeffrey and W. B. Morton, both of New York City, of counsel), for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. In this action the defendant is charged with infringement of plaintiff's patent No. 707,934, granted to Woodville Latham, August 26, 1902, for a Projecting Kinetoscope. The court found claim 7 of the patent—which was the only one in issue —invalid, and dismissed the bill. 248 Fed. 724. The plaintiff appealed.

The defences at the trial were: (1) Invalidity of the patent by reason of prior patents and prior inventions, (2) estoppel by virtue of certain Patent Office proceedings, and (3) non-infringement. Infringement was later admitted. As the issue of estoppel is subordinate to that of validity, we shall address our discussion to the validity of the patent.

[1] A very brief summary of the art of moving picture mechanism is necessary to an understanding of Latham's contribution.

The practical art began with Edison. He is, without doubt, its founder. He solved its fundamental problems by evolving a theory, which, with its picture proportions and time movements, has been accepted by the art and has been practiced almost without deviation from the day of its disclosure.

Edison found, in taking or projecting a series of separate pictures, that it is necessary (in order to give the illusion of continuous and uninterrupted movement) to make an actual interruption in the movement of the picture medium for a time that will permit the separate exposure of each picture but will prevent the eye detecting the interruption. This time, though almost infinitesimal, is measured with nice calculation by the varying sensitiveness of the picture medium and the retina of the human eye.

Edison's first contribution was the medium or particular vehicle on which moving pictures can be carried. This is a sensitized film invented by another but adapted by Edison to receive and project pictures in sequence, the edges of the film being perforated so that it can be moved across the lens aperture of the camera or projector with a predetermined motion. He conformed the perforations of the film to the sprocket rotary mechanism of his next invention. This was a device for taking or projecting pictures in series. This mechanism consisted of two reels or drums placed apart, one above the other. They were respectively film delivering and film receiving reels. Between them was placed a rotary means, being a wheel with sprockets, which, in its rotation, developed the Geneva intermittent movement, and, by its sprocket engagement with the film perforations, drew the film from the delivering reel to the camera lens where it stopped an instant for exposure and then passed it on to the receiving reel. The

intermittent rotary member was geared with a multiple blade shutter, which synchronized with the film as it intermittently passed the lens, thereby bringing the film to a positive stop before the shutter opened, causing a stationary though instantaneous exposure of the picture through the shutter aperture when it opened, and resuming the movement upon the closing of the shutter, to be repeated so rapidly that a succession of pictures projected upon a screen gave the illusion of motion.

Edison's contributions, though very simple, were so complete that their fundamental characteristics have not been improved upon by the art. The art still uses the Edison perforated film and the Edison sprocket rotary mechanism. Such improvements as have been made relate chiefly to exposure problems, and to problems of carrying films of increased length to project pictures in a correspondingly greater series.

At the time of Edison's invention, a moving picture display was of short duration. The film was only about 50 feet long and its weight was inconsiderable. A film of this length and weight responded readily and accurately to Edison's intermittent movement mechanism. Since then, however, the public has demanded exhibitions on a larger scale and the art has responded by supplying films of a thousand feet or more containing many thousand pictures.

The increased length of films increased their weight and raised a problem that was not present when Edison was dealing with short films. The inertia of the greatly increased weight of long films when wound on the Edison delivering reel disturbed the accuracy of exposure registration of Edison's intermittent movement mechanism by jarring or jerking the film and throwing it out of alignment with the lens and shutter, thereby producing pictures with irregular and imperfect spacing. To the solution of this problem, without dispensing with the admittedly necessary elements of Edison's inventions, many inventors applied their talents. Among them was Latham.

Latham's projecting mechanism is a combination of elements which are not very intelligibly shown in the claim of the patent in suit.[1]

The several elements are vertically arranged. Omitting for the sake of clarity idlers and rolls which are not pertinent to this controversy, the first two elements are reels for carrying the film, placed apart one above the other. One is the delivering reel; the other the receiving or take-up reel. The next are two sprocket wheels or toothed drums placed apart, but in close relation respectively to each reel. These sprocket wheels have an uniform continuous rotary motion.

---

[1] Claim 7. "The combination with devices adapted to support the bulk of a flexible film and supply it *for exposure* and receive it after exposure, of positively-driven toothed rotary devices located between and entirely disconnected from said supporting devices and at opposite sides of the exposure-window, said toothed devices being adapted to carry and feed the flexible film by the engagement of their teeth with equally-spaced holes made in the edges of the film and to respectively produce and take up slack in the film, and an intermittently-acting rotary feeding device also provided with teeth which engage with the holes in the film, whereby the film is intermittently fed across the exposure-opening."

Located between the two continuous rotary members near the center of the alignment is another sprocket wheel or toothed drum, which has an *intermittent* rotary motion. Both continuous rotary members and the intermittent rotary member are so geared that their rotation is direct and equal.

The film is drawn at the start from the delivering reel in a steady uninterrupted movement by the first continuous rotary member by positive engagements of its sprockets with the sprocket perforations of the film. Passing this member, the film is relaxed into a loop, the lower part of which is then carried to the intermittent rotary member, which, by engagement of its sprockets with the sprocket perforations of the film, carries the film to the lens aperture with the requisite interruption for exposure through the lens and the corresponding aperture of the shutter. The film is here relaxed into another loop and its lower part is then passed on to the second continuous rotary member, which, by its sprocket engagement with the sprocket perforations of the film, moves the film to the take-up reel where the movement ends. The result photographically is a series of pictures, which, though separately projected, are projected so rapidly that they give the appearance of motion. The result mechanically is twofold: (1) Relief to the intermittent rotary member of tension or drag incident to the weight of the film roll by making a loop in the film just before it is intermittently fed past the lens, and (2) movement of the film at this critical point without jarring and slipping and with the requisite accuracy of registration for exposure.

This mechanism is used everywhere and is a mechanical and commercial success.

[1, 2] Had Latham invented the entire mechanism shown by his patent disclosure, it would be a great invention. But Latham invented none of its parts. All were old. Had he been the first to assemble old parts in the organization of his patented device, he still would be credited with invention of high order. But he was not the first to make such an assemblage, except as he put in it one particular part. It is to the introduction of this part (the conceded invention of another) we think the question of invention is restricted.

What was the particular object of Latham's machine? Manifestly, it was to provide an improved means for using Edison's perforated film. He made the machine for the film.

Where did Latham get the parts of his machine and his idea of their assemblage? The first parts, as we have seen, are the delivering and take-up reels. Edison supplied these and they perform in Latham's structure the identical function they performed in Edison's. The next are the two continuous sprocket rotary members located in close relation to Edison's reels. Armat and Joly supplied these and they perform in Latham precisely the function they were given by Armat.

Armat was perhaps the first to develop practically the idea of taking the film from the reel, not by intermittent movement mechanism as in Edison but directly by a toothed or sprocket mechanism with a continuous movement independent of the intermittent movement which feeds the film for exposure. For his invention Armat was awarded Letters

Patent No. 673,992, May 14, 1901, on an application filed February 19, 1896. He was in some measure preceded by Gray, who was awarded German Patent No. 92,809, June 2, 1895, and United States Patent No. 540,545, June 4, 1895, on an application filed March 9, 1895, and was followed by Joly, who was granted French Patent No. 24,875, August 26, 1895, and United States Patent No. 569,875, October 20, 1896, on an application filed June 5, 1896. Latham's filing date was June 1, 1896.

The continuous sprocket rotary members in Latham perform two functions, being exactly the same they performed in Armat and Joly. They are: (1) Taking the load of the rolled film directly and continuously from the reel, and (2) making the initial movement of a loop.

The next elements in Latham are the two loops of the film. The first is begun, as we have just seen, by a continuous rotary member and is completed by the delivery of the film to the intermittent rotary member. The latter member then draws the film from the loop instead of drawing it directly from the loaded reel, as in Edison, and after passing it before the lens, feeds it to a second loop. The second loop, in its travel toward the take-up reel, performs the same function, by inversion, as the first.

The looping of a delicate or fragile material to avoid strain and rupture in feeding it into rolls was very old in several arts, notably in the printing press art (No. 224,440 to Kidder, 1880; No. 508,814 to Cox, 1893), and it was old also in the moving picture art. It appears in Green and Evans British Patent No. 10,131 of 1889 and in Gray, Armat and Joly (supra), where it performed the same function it performs in Latham.

The remaining element in Latham is the sprocket intermittent rotary means employed to interrupt the movement of the film and give it a positive stop at the lens for an instant of exposure. Edison developed this completely, and had it in his device, but without co-acting mechanism to take up the inertia of the roll and feed the film continuously to a loop. Without discussing Gray, it is clear that Armat and Joly had the three elements in combination,—the continuous movement mechanism, the intermittent movement mechanism, and the film loop between the two. But in Armat and Joly, the intermittent movement of the film was exerted by frictional contact—in Edison by sprockets. Latham took out of Armat's combination Armat's frictional intermittent movement mechanism and substituted Edison's sprocket intermittent movement mechanism. The latter works better on a perforated film.

Latham's elements being old, and the principle of his organization being old, the question of invention is narrowed down to this: Is there invention in substituting Edison's superior sprocket intermittent movement means for Armat's inferior frictional intermittent movement means? When Edison's means is in Latham's organization it performs there precisely the same function on a film artificially relaxed as it performed in the Edison device on a film naturally lax.

As all parts of Latham's device were taken from the prior art, and as they perform in his device the same functions they performed in the devices from which they were taken, without developing any new func-

tions, we are unable to find invention. If invention is wholly lacking, a patent can not be sustained even for the specific combination of specifically contrived elements, which, apparently, is all the plaintiff is asking for.

We have given very careful consideration to the evidence bearing upon Latham's contention, that in inventing a camera involving the principle of the patent, he was before Armat and Joly in the invention of projectors, but we find the evidence insufficient to disturb the legal significance of the patents' filing dates.

We are of opinion that the seventh claim of the patent is invalid for want of patentable invention. The decree below is affirmed.

