## GLOBE OIL & REFINING CO. v. SIN-CLAIR REFINING CO.
### No. 6578.

Circuit Court of Appeals, Third Circuit.

March 23, 1939.

Marvel, Morford & Logan, of Wilmington, Del. (Howard A. Hartman, of Milwaukee, Wis., John J. McKeague, of Chicago, Ill., Louis Quarles and David A. Fox, both of Milwaukee, Wis., Frederick Schafer, of Washington, D. C., and Arthur G. Logan, of Wilmington, Del., of counsel), for appellant.

Ward & Gray, of Wilmington, Del., (Pennie, Davis, Marvin & Edmonds, Dean S. Edmonds, Raymond F. Adams, and S. Howell Brown, Jr., all of New York City, and E. Ennalls Berl, of Wilmington, Del., of counsel), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

The defendant has appealed from a decree entered against it by the District Court for the District of Delaware in a patent infringement suit. The patents involved are Nos. 1,574,546, 1,574,547 and 1,623,773, all issued to John E. Bell and now held by the plaintiff as assignee. A number of questions are raised upon the appeal, but the only one we need consider is that of the validity of the patents.

Patent No. 1,574,546 was issued to Bell on February 23, 1926, for an oil heating furnace. While its specifications state that it relates to pressure stills used for the purpose of cracking or refining crude petroleum to form gasoline, we think it is clear that the invention claimed is in the furnace or heating art and not in that of cracking oil.

Stills for cracking oil are heated by furnaces in which coal, oil or gas is burned. In the stills to which Bell's improvement was directed the oil is passed through metal tubes to which the heat from the furnace is applied. If an excessive amount of heat be applied to any part of a tube there is a tendency for the oil to deposit carbon on the inside of the tube opposite that portion where excessive heat is applied. This not only interferes with the cracking process, but also, since carbon is a poor conductor of heat, these deposits tend to insulate the metal of the tubes from the oil with which the tubes are filled, with the result that "hot spots" are developed in the metal of the tubes. These may cause the tubes to burst with resulting damage to life and property.

The problem which Bell sought to solve was to apply heat from the furnace to the tubes at a reasonably high but uniform temperature throughout the length of the tubes. He claims in the patent now under discussion to have solved it by recirculating through the furnace a portion of

the waste gases passing out through the stack flue. By taking off some of the gases which had performed their function of heating the tubes and were still very hot and conveying those used gases back to the furnace chamber and mixing them there with the hot gases resulting from the combustion of fuel in the fire box, the hot gases from the fuel box were diluted and reduced in temperature so that the resulting mixture made its initial contact with the tubes at a lower and safer temperature. At the same time the volume and velocity of the gases passing along the full length of the tubes were substantially increased with a corresponding increase in the amount of heat absorbed in those portions of the tubes lying beyond the area of initial contact.

Bell's second patent No. 1,574,547, also issued February 23, 1926, covers the process of heating an oil-cracking still by the recirculation of flue gases as disclosed in his first patent and already described. His third patent No. 1,623,773, issued April 5, 1927, was directly related to the first two and constituted an improvement upon them. The invention claimed involves the preheating by means of the exhaust stack gases of the air admitted to the combustion chamber of the furnace to supply oxygen for burning the fuel. By preheating the air a more intense combustion was obtained at a correspondingly increased temperature and by mixing the combustion gases with the returned flue gases as taught by the two earlier patents the increased temperature of combustion is modified and the combustion gases are cooled before they come into contact with the oil-carrying tubes of the still.

The plaintiff contends that the disclosures of these patents for the first time taught the art how to prolong the operation of the cracking process so as to permit continuous cracking. This view was adopted by the court below which sustained the validity of the patents as disclosing invention in the oil-cracking art. In so holding we think the court fell into error.

The patents contain no disclosure of a continuous cracking operation nor do they purport to instruct in the art of oil refining. They are directed entirely to the manner of supplying heat to pipes carrying oil and disclose, as we have seen, a method of regulating and making uniform the amount of heat to be obtained from a furnace and applied upon those pipes. The problem involved is we think clearly one in the furnace or heating art. It remains the same regardless of the nature of the object to which the heat is to be applied. The fact that Bell, who had been called in by the plaintiff's predecessor to solve the problem involved in the patents, was a well known physicist, thoroughly trained in problems of heat transfer and heat conservation, rather than a specialist in the art of oil distillation, bears this out.

Bell solved the problem, as we have seen, by applying two expedients, the recirculation of spent flue gases and the preheating of air entering the furnace. In doing so he applied to a new subject, namely, the heating of pipes carrying oil in a cracking still, expedients which were old in the heating art. That the expedient of recirculating flue gases was old and well known in the heating art is demonstrated by the Möller German patent No. 89,024 of 1896 and the Davis American patent No. 1,335,222 of 1920. Both these patents clearly disclose the recirculation of spent flue gases for the purpose of diluting and cooling the hot gases of combustion.

In the Alexander patent No. 1,387,677 of 1921 the recirculation expedient was also disclosed. That patent related to the process of heating oil retorts and apparatus therefor and in its specification the following appears: " * * * The flame temperatures may be made more uniform by the use of various chemical expedients such as dilution with carbon dioxid (return of waste gases) and such an expedient may be used in connection with the present invention; but I can secure the desired heating uniformity without the use of such expedients. The use of flame tempered by introduction of products of combustion in a well known manner is desirable, but not necessary to the present invention."

The references to the "return of waste gases" and the "introduction of products of combustion in a well known manner" are further evidence that recirculation of spent flue gases was then well known if indeed they do not establish that Alexander directly anticipated the disclosures of Bell's first two patents.

The plaintiff in its brief concedes that "the preheating of air for combustion with the exhaust gases of a heating operation is an old expedient." It follows that the patents in suit must be held to be invalid for want of novelty since they involve merely the application of old expedients in

the old manner to a new subject. Brown et al. v. Piper, 91 U.S. 37, 23 L.Ed. 200; Paramount Publix Corp. v. Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997. In this aspect the case is the same as in Motion Picture Patents Co. v. Calehuff Supply Co., 3 Cir., 251 F. 598, in which this court said, pages 602, 603: "As all parts of Latham's device were taken from the prior art, and as they perform in his device the same functions they performed in the devices from which they were taken, without developing any new functions, we are unable to find invention."

We think that our conclusion is further supported by the fact that Bell delayed for nearly two years in filing his first application. This would tend to indicate that at the time he developed his improvement he himself did not consider that it involved invention. See Miller v. National Broadcasting Co., 3 Cir., 79 F.2d 657.

The decree is reversed and the cause is remanded to the court below with directions to enter a decree dismissing the bill.