**FLORIDIN CO. v. ATTAPULGUS CLAY CO.**

No. 7634.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 8, 1941.

Decided Jan. 30, 1942.

John J. Darby, of Washington, D. C., and George P. Dike, of Boston, Mass., (Hugh M. Morris and S. Samuel Arsht, both of Wilmington, Del., on the brief), for plaintiff-appellant.

Maxwell Barus, of New York City and Herbert L. Cohen, of Wilmington, Del. (Paul R. Ames, of New York City, on the brief), for defendant-appellee.

Before MARIS, JONES, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the validity of the patent known as the Hartshorne patent (No. 2,079,854) for the treatment of fuller's earth designed to increase the capacity of that substance for decolorizing oil. The District Court held the plaintiff's patent invalid for anticipation by and lack of invention over Ikeda patent No. 1,630,660 (owned by defendant) and the corresponding Ikeda Japanese patent No. 42,368. The plaintiff appeals to this court.

The complex colloidal aluminum silicate known as fuller's earth has changed in commercial use from the function of removing oil from wool to that of removing color from oil. Under the process in use before any of the patents involved in this litigation were issued, fuller's earth was dug from the ground in large lumps which were reduced in size by a crusher and dried

in a kiln. The dried earth was then ground to granular form and the product run through sifting screens to secure the desired sizes. Crude oil percolated through these grains was thereby lightened to the desired shade. The instant suit is a by-product of the attempts of the producers of fuller's earth to increase its decolorizing capacity. The attempts have been successful. But the plaintiff claims that the defendant is operating in violation of its patent.

The change which the plaintiff has made in the process through the Hartshorne patent comes at an intermediate stage in the series. Instead of drying the small lumps of clay after they have gone through the crusher, as in the older method, under the Hartshorne process the lumps are ground and then mixed with water, following which the mass is run through an extrusion machine and forced out through holes in a die plate under high pressure. After the squeezing out of the pencil-like pieces from this machine they are dried in a kiln and then ground and sifted as in the former process. The extrusion machine was compared, by the trial court, to an ordinary kitchen meat-grinder. While the plaintiff is reluctant to admit the accuracy of the homely comparison we think it is correct. The action is precisely like that of the meat-grinder with, of course, a machine which is obviously much larger and under pressure which is very greatly increased.

The defendant denies that this presents anything patentable. All the steps in the process except the mixing with the water and extruding through the machine were known before. If there is anything patentable, says the defendant, Ikeda discovered it prior to Hartshorne.

■ Plaintiff contends, on the other hand, that Hartshorne's extrusion process differs from that taught by Ikeda because of the pressure conditions surrounding the extrusion. We think this point is completely answered by the specifications of the Ikeda patent. These described the plasticity of the clay and the size of the holes through which the mixture is to be extruded, and thereby necessarily embrace the application of considerable pressure. The evidence establishes that the pressure thus created is within the minimum prescribed by Hartshorne. It is true that only the latter talks in terms of pounds per square inch. But Ikeda's pressure, although not so specified, necessarily results from following the teaching of his patent. We see no essential difference between the two. Expert testimony offered by the plaintiff brings out the point that additional factors such as the length of the screw in the extrusion machine and the space between the back of the die plate and the end of the screw also affect pressure. This, however, is at most a matter of experimentation with different known types of extrusion machines. It involves no more than a variation in degree normally determined by the skill of one versed in the art and is not a matter of invention. 1 Walker on Patents (Deller's Ed. 1937) § 27.

■ The plaintiff contends, upon the question of anticipation, that Ikeda's patent had been in force for some time, and that no one concerned in the problem of oil decolorization had found any help from it on the problem involved. The lower court found as a fact that defendant learned about the Ikeda patent only after defendant had itself decided that " * * * it would like to use such a machine [extruding machine] in the treatment of its fuller's earth if the patent situation permitted". This finding is supported by substantial evidence and is thus controlling here on appeal. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c. But even aside from this, there is additional testimony to the effect that defendant purchased Ikeda only just before Hartshorne's patent was allowed, so that there would still not be a sufficient showing of a failure on the part of Ikeda, once its application to this art had been attempted, to disclose that in which a worker in the art would be interested. The teachings of a patent, although never fully appreciated or utilized, are nevertheless to be accorded their full measure. The essence of the Ikeda patent is the extrusion of fuller's earth under described conditions. Hartshorne does just that.

■ The plaintiff points out, what is doubtless true, that Ikeda was never interested in the oil decolorizing capacity of fuller's earth but rather its use in drying air, and that his patent has nothing whatever to do with the problem with which those working in fuller's earth had been long confronted and which was not solved except by Hartshorne. It is without significance, however, that Ikeda made no mention of the particular use to which

his process could be put, or that he did not appreciate or understand the problem to its fullest extent. A patent will protect its holder in his monopoly over whatever use it is capable. Enterprise Mfg. Co. v. Shakespeare Co., 6 Cir., 1939, 106 F.2d 800, certiorari denied 1940, 309 U.S. 665, 60 S. Ct. 590, 84 L.Ed. 1012. Nor is any possible deficiency in the explanation offered by a prior patent of its governing scientific principle of importance in determining what falls within the purview of its disclosures. Smith v. Hall, 1937, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049; Electric Storage Battery Co. v. Shimadzu et al., 3 Cir., 1941, 123 F.2d 890. It follows and it is well-known, that there is nothing patentable in the application of an old process to a new use. 1 Walker on Patents (Deller's Ed. 1937) 226. In Paramount Publix Corp. v. American Tri-Ergon Corp., 1935, 294 U.S. 464, 473, 55 S.Ct. 449, 79 L.Ed. 997, the plaintiff struck upon the idea of employing an old and well-known photographic device in a slightly different manner, to reproduce on one film, a combined sound and picture record, instead of two picture records. The court invalidated the patent for lack of invention. In other cases in this court as well, it has been pointed out, in somewhat similar surroundings, that "The law is plain that the discovery that an old process possesses an unsuspected advantage or accomplishes an unexpected result does not entitle one who points out that fact to a patent". Red River Refining Co. v. Sun Oil Co., D.C.E.D.Pa.1939, 29 F. Supp. 636, 640, affirmed on the opinion of the District Court, 3 Cir., 1940, 112 F.2d 575. In United States Hoffman Mach. Corp. v. Pantex Pressing Mach., Inc., 3 Cir., 1930, 44 F.2d 685, the court stressed the fact that there is nothing patentable in using an old means of performing a certain function in a new way even though marked improvement results therefrom. So here, it is the increased adsorptive capacity of fuller's earth which made Ikeda's process of utility in drying air. And it is that same phenomenon on which Hartshorne relies to advance the art of decolorizing oil. We conclude that there is no invention, and the authorities cited above support that conclusion.

The plaintiff advances one more argument to differentiate his patent from that of Ikeda. The latter stopped with the production of the molded sticks from the extrusion machine. The Hartshorne patent goes on to include the further steps of drying, grinding and sifting the extruded product. The addition of these latter steps, the plaintiff claims, raises the Hartshorne process to the dignity of invention. It is clear from the record that the sticks, produced at high pressure,[1] when granulated and sifted, enhance the decolorizing value of fuller's earth. The plaintiff's own experts set that increase at about 22% and 28% respectively. The legal question then is whether the lack of specification in the Ikeda patent to call for drying, grinding and sifting the product after extrusion and the specification of those steps by Hartshorne gives the Hartshorne patent a feature of invention which Ikeda does not have.

It is to be remembered, however, that it was standard practice in what plaintiff itself describes as "the old process" to grind and sift the earth after it had been treated. All that Hartshorne has done is to alter the method of treatment by the introduction into this old process of what Ikeda taught. By whatever theory of chemistry or physics, the critical point is that of the increased adsorptive qualities of fuller's earth. By the mere application of what Ikeda taught, Hartshorne has improved the art of decolorizing oil. There is thus really no question of a new combination of steps which distinguishes Hartshorne's claims from Ikeda's disclosures. It is rather a matter of instituting a known factor as a new step in an old process to produce substantially the same result, although patently with considerable enhancement of efficiency. As Judge Maris has remarked, " * * * the application of old expedients in the old manner to a new subject" is not invention. Globe Oil & Refining Co. v. Sinclair Refining Co., 3 Cir., 1939, 103 F.2d 95, 96. A similar situation confronted the Supreme Court in Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., 1935, 294 U.S. 477, 55 S.Ct. 455, 459, 79 L.Ed. 1005 where the patent in issue specified the addition of a known phenomenon to different surroundings to produce a new type of machine with considerable commercial utility.[2] The patent was held invalid because the court felt the

[1] The point of pressure in Ikeda's process has already been discussed supra.

[2] The mere facts of extensive utility and that a long felt need was satisfied are not sufficient to supply invention. Sonneborn Sons, Inc., v. Coe, 1939, 70 App.D.C. 97, 104 F.2d 230.

machine to be "the product of skill, not of invention".

We think the conclusion inescapable that the Hartshorne patent was anticipated in the process described by Ikeda. Whether that process was patentable is, obviously, not before us. The essence of the Ikeda patent is the extrusion under considerable pressure of a mixture of fuller's earth and water from an extrusion machine. This being established in the art before the Hartshorne patent we do not think that there was anything patentable, whether we view Hartshorne's addition as a mere grinding of the extruded material to get the desired size, or as an introduction of the extrusion process into the old method employed in decolorizing oil.

The question was raised in the District Court concerning the lack of good faith on the part of the Technical Director of the plaintiff company in representations made to the Commissioner of Patents in securing the Hartshorne patent. Our view of the case makes it unnecessary for us to go into this question and we do not pass upon it.

Argument has been made also alleging error on the part of the trial court in failing to allow the plaintiff to see an application for a patent covering this process which defendant had made prior to the trial. Such application constituted no estoppel against the defendant. Paramount Publix Corp. v. American Tri-Ergon Corp., 1935, 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997. The application became an exhibit in the case before the trial was over and even assuming its relevancy, we see no substantial harm plaintiff could have suffered by reason of not having it sooner.

The judgment of the District Court is affirmed.