**JACQUARD KNITTING MACHINE CO., Inc.**

v.

**ORDNANCE GAUGE CO., Inc. et al.**

**JACQUARD KNITTING MACHINE CO., Inc.**

v.

**ORDNANCE GAUGE CO., Inc. et al.**
Nos. 10992, 10982.

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1954.

Decided May 19, 1954.

---

J. Stanley Preston, Bronxville, N. Y. (Francis L. Van Dusen, Philadelphia, Pa., on the brief), for plaintiff-appellant.

Leonard Kalish, Philadelphia, Pa., for defendants.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a patent infringement case. The district court held the patent invalid. 108 F.Supp. 59. Defendant's counterclaim seeking a preliminary injunction was denied. Both sides appeal.

The patent involved, United States 2,-397,456, is a method of transferring stitches from one needle to another in knitting machines or to another loop-receiving instrument. Its primary application, as in this instance, is to automatic knitting machines. The first of its two claims concerns the expansion of the stitch or loop so as to lessen the strain on the material; the second with the accurate insertion of the needle into the loop thereby largely eliminating misses and consequent dropped stitches resulting in faulty product. The important practical use of the patent is that it permits the complete knitting of a fabric which is partly rib knit and partly jersey knit instead of knitting the rib and jersey pieces separately and later sewing them together.

The claims read:

"1. In a method of transferring a knitting loop from a needle to another instrument, the steps which consist of placing the loop back of the needle hook in position to be cast off over the hook, then enlarging the loop by carrying the end of the loop forwardly and thereby drawing into the loop yarn from an adjacent loop or loops, and thereafter swinging one leg of the loop away from the adjacent side of the needle and swinging the forward end of the opposite leg of the loop across the needle to open the loop to admit the loop-receiving instrument.

"2. In a method of transferring a knitting loop from a needle to another instrument, the steps which consist of opening the loop, then placing the loop-receiving instrument across one leg of the loop, then advancing the end of the loop to definitely place said end at the opposite side of the loop-receiving instrument from said leg, during such movement of the loop the position of the loop-receiving instrument nullifying any tendency of such loop-positioning movement to place the said leg at the same side of the loop-receiving instrument as the end of the loop, and then projecting the loop-receiving instrument to place its end beyond the end of the loop whereby the loop-receiving instrument is entered into the loop."

Plaintiff's main contention regarding its first claim is that the necessary enlargement of the loop is accomplished with such an absence of strain that even the "tender yarns" can be satisfactorily thus handled. The distinctive feature asserted is that the loop enlargement produced by forward drawing is converted into sidewise placement and enlargement. It is urged that the combination of the enlarging of the loop by forwardly pulling out the yarn and then moving sideways at least a portion of the consequent loop enlargement is a new kind of operation not disclosed by the prior art. In addition to the enlargement detailed in the claim the specification provides that "Continued movement of the clip passes the bulge of the clip into or further into the loop *with perhaps further enlargement of the loop.*" (Emphasis supplied). The district court held that the claim was anticipated by the Foster United States Patent 885,150 both in its disclosure and in the fact that the operation of the Foster needle produces the method of plaintiff's patent. Plaintiff concedes that Foster possesses the forward drawing but denies that it has the latter so-called swing of the loop enlargement. Whatever the operation may

be called we must agree with the district court that "Necessarily, as the needle of the Foster patent rises, yarn constituting the forward end of the left hand leg has to be pulled across the back of the needle." [108 F.Supp. 62.] That is substantially what happens in the second phase of the first claim of the patent in suit where the swing of the loop is combined with the prior pulling forward of the loop. Plaintiff insists that if there is any movement of the loop in the Foster patent across the needle it is de minimis. True the movement is less than that which occurs in plaintiff's patent but plaintiff's claim itself states that it is only the forward end of the loop which is swung across the needle. The difference between the two patents is really one of degree and there is sound justification for the trial court's conclusion that " * * * the claim is fully anticipated by Foster's disclosure."

Though it asserts as the inventive difference the initial enlargement of the stitch and the later sidewise swing of it, plaintiff does not confine its claim to that one enlargement and does state in its specification that there may be a further enlargement after the loop has been expanded in the first instance. If this contention were seriously pressed as the new method (and we do not think that it is) the alternative holding of the trial judge that it represented no advance over the prior art would have to be affirmed for that is what is plainly evidenced by the record.

Plaintiff's theory is that even if the forward drawing produces but half of the necessary expansion and the clip, as it says in its brief, is "depended on to draw out the remaining 50% of the needed yarn—then only 50% of the full potential advantage of this method of enlarging and displacing the loop sidewise is obtained—but to that extent the operation is within the invention." The sidewise placement after the forward drawing is designated as all important and, according to plaintiff, that operation does not depend on how much of the total enlargement is provided by the forward

pull of the yarn as long as there is enough of the "opposite" leg to swing across the needle staff. Plaintiff's own interpretation of the part played by the possible later clip pull coupled with the fact that this is not mentioned in the claim (even though the latter does not state that the forward movement furnishes the total enlargement) lends firm support to the finding of the judge that the vague statement of the method of the first claim lacks the definiteness required by the patent statute. 35 U.S.C.A. § 33 [1952 Revision, 35 U.S.C.A. §§ 111, 112, 162].

With respect to Claim #2 of the suit patent, we are in accord with the district court's conclusion that a comparison of it with the Harris patent (United States 1,669,296) reveals that if the latter is accurately timed it will work exactly in accordance with the claim. Again a method is involved, in this instance the accurate insertion of the receiving needle into the loop. Appellant endeavors to point out that Claim #2 differs from Harris not only in its combination of elements but in its mode of operation. As we see it they are substantially alike with ample reason for the finding that plaintiff's Claim #2 had been anticipated by Harris.

The situation as shown by the Foster and Harris patents makes it unnecessary to go into the other prior art disclosures suggested.

### Infringement

The allegation of infringement of the first claim fails since from defendant's evidence believed by the court virtually the whole enlargement of the loop by defendant's method occurs before it is reached by the bump. The district judge's disposal of plaintiff's point that the defense machine can be adjusted to perform like plaintiff's with respect to Claim #1 was a matter of his judgment on the evidence before him and must be affirmed.

With reference to Claim #2, the finding that the defense machine would be guilty of palpable infringement of plain-

tiff's patent if the latter were valid is strongly indicated by the evidence.

### Estoppel

■ The district court held that defendant Sirmay, inventor, patentee and assignor of the patent in suit, was estopped to deny its validity but that defendant Ordnance was not bound by such ruling as the necessary privity between it and Sirmay had not been shown.

Sirmay executed the three applications connected with the patent. Two of these, it is claimed, were signed by him because of misrepresentation. Of the third, which was the application for the patent itself, it is said that he both read and signed it under duress. The trial judge was thoroughly justified in refusing to accept this attempted explanation of the execution of the applications and in barring Sirmay from contesting the validity of the patent as part of his defense.

Plaintiff moves here, as it did in the district court, to strike the testimony of Sirmay as a witness called by the corporate defendant. The motion is denied. De Laval Separator Co. v. Vermont Farm-Mach. Co., 2 Cir., 1904, 135 F. 772.

With reference to estopping defendant Ordnance Gauge Co. from opposing the validity of this patent, there is sufficient in the record to uphold the ruling of the trial judge that plaintiff had not established privity between Sirmay and Ordnance. Without such privity there could be no estoppel. National Cash Register Co. v. Remington Arms Co., D.C.D.Del. 1922, 283 F. 196, affirmed 3 Cir., 1923, 286 F. 367.

### Extension of the Patent Monopoly

■ The district court decided that for the purposes of this suit defendant's machine must be taken as unpatented and that if plaintiff's prayer for an injunction restraining its sale was allowed the effect would be to prevent defendant " * * * from selling an unpatented machine in competition with the plaintiff." Plaintiff's opposition to this is based on the proposition that defendant by attachment of special cams to its ma-chine can give it the further capability of transferring stitches and that therefore it should have protection against its sale because of infringement direct and contributory. The decision that there was insufficient credible evidence to hold that defendant had so operated its machine was for the trial court. It follows that the court thereafter rightly refused, as stated in the opinion, " * * * to assist the owner of a method patent to monopolize unpatented machines." Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Carbice Corp. of America v. American Patents Development Corporation, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819.

### Defendants' Costs

■ Plaintiff argues that these should not be taxed against it. This was a matter for the discretion of the district court.

### Alleged Double Patenting

Defendant Ordnance in its first counterclaim admits that the subject matter defined by the claims of the patent in suit is " * * * not the same invention (nor substantially the same invention) as is defined by the claims of either Patent 2,181,105 or Patent 2,326,694 [the forerunners of the suit patent]." Quite aside from this the trial judge, as he was warranted in doing, accepted plaintiff's evidence to that effect. That action completely disposes of the point on this appeal.

### Alleged Invalidity By Reason of Prior Public Use and Abandonment

■ The subject of the claims of the suit patent was disclosed but not claimed in the first of the three applications for the patent. The claims were first presented when the second application (the first divisional) was made which was more than two years after public use began. The trial judge held that the original application disclosed " * * * a method sufficiently to support the application for the patent in suit as a

**508**

true divisional-continuation application." That gave plaintiff the date of the filing of its first application as the effective filing date. The court then found that public use for more than two years prior to the first application (May 9, 1936) had not been proved. The court also found with reference to abandonment that "The continuity maintained in the successive applications shows that plaintiff intended to retain and not to abandon the disclosed invention." The record adequately bears out those findings.

### The Claim of Defendant Ordnance to Injunctive Relief

This arises out of the second counterclaim[1] and was denied by the district court. Relief there requested was for a preliminary injunction alone and the trial judge so construed it. We are now asked in effect to insert in the prayer of the second counterclaim the phrase "and for a permanent injunction thereafter" on the ground that the omission was inadvertent. Whatever the reason for leaving it out, it was not presented to the district court and cannot be considered on this appeal.[2] Despite the fact that the trial judge correctly decided that the application for permanent injunction was not before him and that under the circumstances the determination the patent was invalid provided all the needed relief, he, nevertheless, carefully examined the defendant's full contention on this point[3] to ascertain whether it had made out a case entitling it to the injunction sought. His conclusion that it had not is sound and based on substantial evidence.

Defendant's grievance against plaintiff for which it claims an injunction is the suit itself and matters connected with it. According to its brief it desired by injunction to have plaintiff required " * * * to undo or mitigate the effects of the suit and its other cor-related acts * * * and [to enjoin] plaintiff from suing or threatening defendant's customers or prospective customers." On the basic principle involved the district judge correctly held: " * * * that the bringing of suit for patent infringement on an unadjudicated patent cannot, per se, subject the patent owner to prosecution or civil liability for violation of the antitrust laws. To hold otherwise would be to make a serious inroad upon the integrity of the patent system."

With reference to the various charges made by defendant against plaintiff relating to the latter's timing of the suit, news releases, oral notices, personal animosity between its vice president and Sirmay and the like, the trial judge found that if plaintiff's conduct was actionable at all it must be under the antitrust laws or the general law of unfair competition.

He then went on to hold as to the first that there was " * * * no evidence in the case of a general conspiracy or combination to violate the antitrust laws." Regarding the unfair competition alleged the court found that this stemmed from the suit itself "plus the legitimate concomitant of a properly worded notice to the trade with its implied warning to potential infringers"; that there had been no repetition of that warning and that there was nothing to show "that the plaintiff would continue or renew its publicity after judgment of invalidity has been entered in this Court." We are satisfied from our own examination of the record that this view of the trial judge is confirmed by the evidence.

### Defendant's Request for Attorney's Fees

The defendant Ordnance concedes that ordinarily in a patent infringement case attorney's fees are not allowed. It insists that this is not the ordinary patent litigation because of the

---

1. The first counterclaim alleged the invalidity of plaintiff's patent and was sustained.

2. Defendant urges that in its answer it prayed " * * * for such other and further relief as may be proper under all

circumstances of this case." Neither that nor similar language appears in the counterclaim.

3. We find no mere limited consideration of the evidence as contended by defendant.

manner of obtaining plaintiff's patent, the institution of the suit and its prosecution. The trial judge, passing on defendant's request to find that the action was brought in bad faith, said "I cannot find that the plaintiff in this case did not believe that it was legally entitled to the injunction it asked for and I cannot affirm the defendant's request." On the question of delay the court concluded that the defendant was fully as responsible for this as the plaintiff.

The allowance of counsel fees was within the statutory discretion of the trial judge, 35 U.S.C.A. § 70 [1952 Revision, 35 U.S.C.A. §§ 283–286, 290]. Finding as he did that there was no bad faith or other equitable consideration of similar force which would make it greatly unjust for defendant to take care of its own counsel fees, the court properly denied the application. Park-In-Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137.

The judgment of the district court will be affirmed.