CHEMICAL CONSTRUCTION CORPO-
RATION, Plaintiff-Appellant,

v.

JONES & LAUGHLIN STEEL CORPO-
RATION, Defendant-Appellee.

CHEMICAL CONSTRUCTION CORPO-
RATION, Plaintiff-Appellee,

v.

JONES & LAUGHLIN STEEL CORPO-
RATION, Defendant-Appellant.

Nos. 13825, 13826.

United States Court of Appeals
Third Circuit.

Argued June 19, 1962.

Decided Dec. 18, 1962.

Walter H. Free, New York City, (Brumbaugh, Free, Graves & Donohue, John W. Brumbaugh, James N. Buckner, New York City, on the brief), for Chemical Const. Corp.

Walter J. Blenko, Jr., Pittsburgh, Pa., (Walter J. Blenko, Gordon R. Harris, Blenko, Hoopes, Leonard & Buell, Pittsburgh, Pa., on the brief), for Jones & Laughlin Steel Corp.

Before BIGGS, Chief Judge, and GANEY and SMITH, Circuit Judges.

SMITH, Circuit Judge.

These appeals are from a judgment entered in an action for the infringement of Patent No. 2,604,185, granted in July of 1952, on an application filed by Johnstone and Anthony in November of 1946, and assigned to the Pease-Anthony Equipment Company prior to the grant thereof. The patent and all rights thereunder were later assigned to the plaintiff. The only claims in issue in the trial of the action were 5, 6, 8 and 9, which were held invalid and, if valid, not infringed. We consider initially only the questions raised on the plaintiff's appeal; the questions raised on the defendant's appeal will be separately considered.

### PATENT IN SUIT

The patent in suit relates to improvements on the impingement method for the removal of particulate matter from industrial gases, and apparatus suitable for the practice of the methods. The method was well known in the art and had been highly developed long prior to the application for the patent. We direct our particular attention to Claims 9 and 6, which are admittedly typical.

The alleged invention of claim 9 is described as follows:

"The method of washing gases to remove finely divided matter therefrom which comprises directing the gas to be treated through a treating passage WHILE ACCELERATING THE GAS, CONTINUOUSLY MAINTAINING WITHIN THE ACCELERATED GAS STREAM and in spaced relation over the stream cross-section within the treating passage DISCRETE MASSES OF WASHING LIQUID, said masses of washing liquid being introduced transversely of the gas stream TO PENETRATE THE STREAM AND CAUSE THE ACCELERATED GAS AND SUSPENDED MATTER TO IMPINGE ON and disrupt the liquid masses in turbulent extended-surface contact between the gas and the liquid, and thereafter separating the suspended droplets from the gas." (Emphasis by the Court).

The alleged invention of claim 6 is described as follows:

"Apparatus for washing gases to remove finely divided matter therefrom, COMPRISING A VENTURI PAS-

SAGE WITHIN WHICH THE GAS IS ACCELERATED, and means for introducing washing liquid into THE ACCELERATED GAS STREAM WITHIN THE PASSAGE comprising a plurality of nozzles disposed in spaced relation around the Venturi passage, said nozzles having discharge apertures for discharging solid jets of washing liquid INWARDLY OF AND SUBSTANTIALLY NORMAL TO THE WALLS OF SAID PASSAGE IN PENETRATING RELATION to the accelerated gas streams TO CAUSE THE SAID GAS STREAM TO IMPINGE ON SAID JETS AT A RELATIVE VELOCITY SUBSTANTIALLY THAT OF THE ACCELERATED STREAM within the passage and thereby disrupt the liquid jets in turbulent extended-surface contact between the liquid and the gas." (Emphasis by the Court).

The venturi is essentially a cylinder, the internal surface of which consists of two truncated cones connected at the small ends. The venturi is employed in the alleged invention of claims 5 and 6 as a means to increase the velocity of the gas. There are several modifications of the structure found in the prior art.

The method of claim 9 comprises the following successive and concomitant steps: (1) the introduction of the gas through an inlet duct under the influence of a conventional blower; (2) the acceleration of the gas stream by means of a venturi; (3) the introduction of the washing liquid, through pressure-atomizing nozzles or other means, in the vicinity of the venturi throat and transversely of the gas stream; (4) the maintenance of the washing liquid in "discrete masses" within the accelerated gas stream; and (5) the separation of the droplets, on which the particulate matter is deposited, by conventional means. The claim to invention is limited to steps (2), (3) and (4), which embody the inventive concept.

The apparatus described in claim 6 comprises but two elements: (1) a venturi passage, hereinabove described; and (2) a plurality of nozzles annularly disposed in the vicinity of the venturi throat in the manner described in the claim. The specifications recommend utilization of a conventional blower as a means to introduce the gas into the chamber under pressure, a means admittedly well known in the art.

### PRIOR ART

The impingement method for removal of particulate matter from industrial gases was in common use many years prior to the application for the patent in suit. It was common practice first, to introduce the gas under the influence of a suitable fan or blower; second, to accelerate the gas stream by directing it through an orifice or a venturi; and third, to introduce the water in the form of a fine spray and transversely of the gas stream. The advantages of this combination of operational steps were well known.

It was recognized that the removal of particulate matter could be accomplished by forcibly directing the gas stream against a film or sheet of water which entrained the inert matter while permitting free flow of the gas. It was well known that the introduction of the water across the gas stream in the form of a fine spray extended the effective surface of the water, thereby increasing the area of inter-facial friction. It was recognized that the effectiveness of the impingement method was dependent on not only the affinity of the dust particles for the washing liquid but also on the electrostatic influence produced by friction.

The Dye Patent, No. 420,378, dated January 28, 1890, covers an apparatus for the removal of particulate matter from illuminating gas. The relevant disclosure of this patent must be considered in the context of the state of the art as of the time of the cited patent. Illuminating gas was generated in a sealed retort from which it was discharged at a relatively high temperature which increased its volume and consequently its velocity. The cited patent describes an apparatus in which the water, introduced transversely of the gas stream,

is trajected across the gas stream and against the inner surface of the conduit so as to rebound in the form of a fine spray. The gas stream, the velocity of which is relatively higher than that of the water, disrupts the sheet of water and produces atomization and an area of turbulence. The removal of the particulate matter, according to the specifications, is effected by the impingement of the gas stream against the "sheet of water" and "the diffused spray."

The British Patent to Danner and Kubelka, herein identified as the Danner Patent, No. 5689, accepted August 3, 1901, relates to a method and an apparatus for the removal of particulate matter from industrial gases. The patent covers two variants, one in which the gas is introduced concurrent with the water, and another in which the gas is introduced countercurrent to the water; the operative principle inherent in each method is essentially the same. We select for discussion the latter method.

The method of the cited reference comprises the following successive and concomitant steps: (1) the introduction of the gas into a chamber under the influence of a blower; (2) the acceleration of the gas stream by means of a venturi; (3) the introduction of the washing liquid through pressure atomizing nozzles or other means, in the vicinity of the venturi throat and countercurrent to the gas stream; (4) the maintenance of the washing liquid in the path of the gas stream and in the form of a finely divided spray; and (5) the separation of the droplets, on which the particulate matter is deposited, by conventional means.

The very essence of the invention, according to the specifications of the patent, resides in forcibly driving the gas stream against the finely divided spray of cleansing liquid with "great velocity," a velocity relatively higher than that of the cleansing liquid. The patent teaches that the impact of the gas stream, accelerated to a high velocity, extends the effective surface of the cleansing liquid, and thereby intensifies the cleaning action.

The apparatus employed in the described method comprises the following: (1) a blower of the conventional type; (2) a variant of the venturi passage; (3) a spray nozzle axially disposed in the vicinity of the venturi throat; and (4) conventional means for the collection of the particulate matter.

There is cited as prior art a "Venturi Dust Collector" constructed by the Bowen Research Corporation and installed in the plant of the Victor Chemical Works in 1940. This apparatus, which has been in continuous use since its installation, comprises the following: (1) a conventional blower fitted with a scroll; (2) a venturi passage of the type hereinabove described; and (3) a nozzle of the pressure atomizing type, axially disposed within the venturi passage. The apparatus and the principle of its operation were described in bulletins and advertising literature published and circulated long prior to 1946, when the application for the patent in suit was filed.

The method employed in the removal of the particulate matter, in the operation of the described apparatus, comprises the following steps: (1) the introduction of the gas through a scroll, under pressure and at high velocity; (2) the acceleration of the gas stream by means of a venturi; (3) the introduction of the washing liquid, through the pressure atomizing nozzle, and transversely of the gas stream; and (4) the separation of the particulate matter by conventional means. The introduction of the gas stream through a scroll imparts to it a rotational and axial velocity.

An additional reference cited is a "Venturi Dust Collector," constructed by the Bowen Research Corporation, and installed in a plant of the National Lead Company in 1940. This apparatus comprises the same elements employed in the installation at the plant of the Victor Chemical Works, modified to meet the particular conditions there encountered. This reference is relevant but a discussion of it would be unnecessarily repetitious.

The necessary limits of this opinion will not permit a comprehensive discussion of other cited references which, like those heretofore discussed, disclose the utilization of a venturi as a means to accelerate the gas stream. See Brassert Patent (British) No. 421,811, accepted in 1934; and Bowen Patent, No. 2,118,803, granted in 1938. These patents teach also the advantage of maintaining the washing liquid in the path of a gas stream and in the form of a fine spray.

## PATENT VALIDITY

■■ We agree with the court below that the claims in issue are invalid because of anticipation by and lack of invention over the prior art. The decision rested on a proper interpretation of the claims in issue and a careful appraisal of relevant prior art.[1]

■ The alleged inventions of the apparatus claims comprise nothing more than an aggregation of old components in an apparatus in which these components perform no function or operation different from that theretofore performed by them in earlier gas washers. Such aggregations lack invention and are not patentable. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); Packwood v. Briggs & Stratton Corp., 195 F.2d 971 (3rd Cir., 1952), cert. den. 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657 (1952); Ainsworth v. Gill Glass & Fixture Co., 106 F.2d 491 (3rd Cir., 1939). These inventions do not meet the high standard established by the cited cases.

The method claims cover combinations of the operational steps employed in the practice of the alleged inventions. These combinations are claimed as improvements on the prior art. The allegedly novel concept upon which the claim to patentable invention rests embodies the following features: (1) the acceleration of the gas stream to a high velocity, a velocity relatively higher than that of the washing liquid; (2) the maintenance of the washing liquid in "discrete masses"; and (3) the utilization of the accelerated gas stream to atomize the washing liquid. It was urged in the prosecution of the patent application, as it is here, that this concept distinguished the methods of the patent from those of the prior art.

■ What is meant by the term "discrete masses" is not explained in the patent in suit. We must therefore assume that it is used in its ordinary sense. Universal Oil Products Co. v. Globe Oil & Refining Co., 137 F.2d 3 (7th Cir., 1943), affd. 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944). The term is broadly descriptive of a mass composed of divided particles, or globules, usually produced by atomization. It is synonymous with the term "finely divided washing liquid," as used in the patent in suit. It is synonymous also with variations of the term found in the prior art. The descriptive language employed by the patentees adds nothing to their claim to patentable invention.

The inventions of the Danner patent, apparatus and method, were directed to the solution of a problem known in the industry—the disadvantages inherent in the methods then employed. It was known that conventional gas washers effectively removed coarse matter but did not effectively remove other impurities such as dust. Danner and Kubelka recognized, and their patent teaches, that the efficiency of known methods could be substantially improved "by driving the gas with GREAT VELOCITY against a FINELY DIVIDED cleansing * * * substance and thus causing it to im-

---

**1.** This prior art was not considered by the Patent Office. Therefore the statutory presumption of validity ordinarily attaching to the patent grant is weakened. Scripto, Inc. v. Ferber Corporation, 267 F.2d 308 (3rd Cir., 1959), cert. den. 361 U.S. 864, 80 S.Ct. 122, 4 L.Ed.2d 104 (1959); Dole Refrigerating Co. v. Amerio Contact Plate Freezers, Inc., 265 F.2d 627 (3rd Cir., 1959).

pinge upon the latter." (Emphasis by the Court). They recognize further that a higher degree of purification could be obtained by increasing the velocity of the gas stream. These features were fully described and claimed by the patentees as the essence of their inventions. The means employed to accelerate the gas stream was a venturi passage in conjunction with a suitable blower, the means employed in the practice of the methods of the patent in suit.

The operative principle of the inventions of the Danner patent is explained in the specifications as follows: "Our new process * * * is based upon [the] principle of increasing the RELATIVE VELOCITY OF THE GAS towards the cleansing agent BEYOND A CERTAIN MINIMUM LIMIT and the consequent positive throwing out of the impurities; and this process is rendered still more valuable by the DECREASE OF THE AREA OF THE CROSS-SECTION OF THE CHAMBERS · OR CHANNELS and therefore the DENSER DISTRIBUTION OF AN EQUAL AMOUNT OF THE CLEANSING AGENT." (Emphasis by the Court). It is stated in the specifications that as a "consequence of the STRONG IMPACT thus produced and the GREAT FRICTION of both substances, all impurities such as soot, dust, * * *, contained in the gas are separated." (Emphasis by the Court).

The patent to Danner and the patent in suit are in the same field and their methods relate to the same subject matter; their operational steps are identical. This conclusion is supported, if support were needed, by the testimony of a professional engineer, called as an expert witness by the appellant. The methods of Danner may be differentiated from the methods of the patent in suit only in the function ascribed by the latter to the accelerated gas stream, i. e., the "atomization" of the washing fluid by the impaction of the gas. It is argued in the appellant's reply brief that this function is "the very crux of the invention" of the claims in issue.

Atomization is a physical phenomenon produced by the introduction of gas, at high velocity, into a stream or film of water; the degree of atomization is directly proportional to the velocity of the gas. It necessarily follows that in the practice of the Danner method the acceleration of the gas to a high velocity further subdivides the "finely divided cleansing liquid" upon impact; this is gas atomization. If the disclosures of the patent to Danner are accorded their full significance, it is evident that there is no critical distinction between his method and the methods of the claims in issue.

■ The failure of Danner to claim as a feature of his invention the utilization of the accelerated gas stream as a means to atomize the cleansing liquid does not detract from the comprehensive significance of his disclosure. General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43 (1945); Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049 (1937); Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L. Ed. 610 (1928); Floridin Co. v. Attapulgus Clay Co., 125 F.2d 669 (3rd Cir., 1942). The patent to Danner must be given its full import as an anticipation even though he may have failed to perceive all the advantages of his inventions or to aptly describe their principle of operation. Ibid.

The appellant argues that the methods of the claims in issue rest on the concept of accelerating the gas to a velocity much higher than that contemplated by Danner. This argument cannot be accepted without reading into the claims specific limitations disclaimed by the patentees. We find upon examination of the file wrapper that a claim which prescribed the desirable gas velocity was rejected by the Patent Office and cancelled by the patentees.

■ It is an established rule of patent construction that "the claims allowed cannot by construction be read to cover what was thus eliminated from the pat-

ent." Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 221, 61 S.Ct. 235, 239, 85 L.Ed. 132 (1940); Morgan Envelope Co. v. Albany Perforated Paper Co., 152 U.S. 425, 429, 14 S.Ct. 627, 38 L.Ed. 500 (1893). The rule is applicable not only when the cancelled claim is broader than those allowed but also when the cancelled claim is narrower. Ibid.

The Bowen dust collector is in the same field as that of the patent in suit. It was designed and constructed as an installation for the removal of particulate matter from industrial gases. The operational steps employed in this apparatus are identical with the operational steps of the methods of the patent in suit. The Bowen apparatus, if later, would infringe the patent in suit and the charge of infringement could not be averted by imparting to the gas stream a rotational as well as a linear velocity, particularly in view of Danner. It is an established axiom of the patent law that a device or method which would infringe if later than a disputed patent, anticipates if earlier. American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 14, 51 S.Ct. 328, 75 L.Ed. 801 (1931); Knapp v. Morss, 150 U.S. 221, 228, 14 S.Ct. 81, 37 L.Ed. 1059 (1893); Faries Mfg. Co. v. S. W. Farber Mfg. Co., 47 F.2d 571, 572 (2nd Cir., 1931). The axiom is applicable here.

However, even if it be assumed that the defense of anticipation was not adequately sustained by the evidence, the court below correctly held the method claims invalid for lack of patentable invention over the prior art. General Electric Co. v. Jewel Incandescent Lamp Co., supra; Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945); Cuno Engineering Corp. v. Automatic Devices Corp., supra; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., supra; Altoona Publix Theatres v. Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005 (1935). The allegedly novel concept, claimed by the patentees as the essence of their invention, required nothing more than the routine application of the common knowledge and skill of the art. This is not patentable invention. Ibid.

The methods of the claims in issue embrace nothing more than the operational steps employed in the prior art. The principle of accelerating the gas to "great velocity," relatively higher than the velocity of the washing liquid, was fully disclosed by Danner and claimed by him as a feature of his invention. There were also others who recognized the advantage of accelerating the gas stream. The ascertainment of the optimum range of velocity, by the application of mathematical formulae discovered long after Danner, required nothing more than routine experimentation, a course plainly indicated by the prior art and admittedly followed by the patentees. The principle of introducing the washing liquid transversely of the accelerated gas stream was also well known.

The claimed advance over the prior art fails to meet the standard of patentable invention. General Electric Co. v. Jewel Incandescent Lamp Co., supra; Sinclair & Carroll Co. v. Interchemical Corp., supra; Cuno Engineering Corp. v. Automatic Devices Corp., supra; Lincoln Engineering Co. of Illinois v. Stewart-Warner Co., supra; Altoona Publix Theatres v. Tri-Ergon Corp., supra; Mandel Brothers v. Wallace, 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12 (1948); Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973 (1945); Standard Brands v. National Grain Yeast Corp., 101 F.2d 814 (3 Cir., 1939), affd. 308 U.S. 34, 60 S.Ct. 27, 84 L.Ed. 17 (1939). The methods conceived by the patentee, measured by commonly accepted criteria, do not surpass the common knowledge and skill of the art but arise from it as a consequence of its normal and expected development.

COMMERCIAL SUCCESS

The claim to patentable invention here rests rather heavily on the voluminous evidence of the commercial success which followed the favorable reception of the alleged invention by several manufac-

**374**

turers of steel and others. It is generally recognized that commercial success is an unreliable test of patentable invention and should be resorted to only where the issue is in doubt. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra; Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235 (1949); Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Pfanstiehl Chemical Co. v. American Platinum Works, 135 F.2d 171 (3rd Cir., 1943); Durand v. Bethlehem Steel Co., 122 F.2d 321 (3rd Cir., 1941). The lack of patentable invention being beyond doubt in the instant case, the commercial success doctrine has no application.

### DEFENDANT'S APPEAL

 The defendant argues that the court below should have adjudged invalid the remaining claims of the patent. These claims were not put in issue by either the plaintiff or the defendant and any determination as to their validity would have been error. Laufenberg, Inc. v. Goldblatt Bros., 179 F.2d 832, 835 (7th Cir., 1950), and the cases therein cited. Such a determination would have violated the rights reserved to the plaintiff by the disclaimer statutes, which were enacted to mitigate the earlier rule under which a patent was held void if any claims thereof were found to be invalid. 35 U.S.C. §§ 253 and 288; Cf. Triplett v. Lowell, 297 U.S. 638, 642, 643, 56 S.Ct. 645, 80 L.Ed. 949 (1936).

 The defendant complains of the denial of his application for counsel fees. The award of counsel fees is committed to the discretion of the trial court and the award is proper only in "exceptional cases" within the meaning of the statute. 35 U.S.C. § 285; Hardinge Co., Inc. v. Jones & Laughlin Steel Corp., 275 F.2d 37 (3rd Cir., 1960), cert. den. 363 U.S. 828, 80 S.Ct. 1598, 4 L.Ed.2d 1523 (1960); Jacquard Knitting Mach. Co. v. Ordinance Gauge Co., 213 F.2d 503 (3rd Cir., 1954) and the case therein cited. The court below having failed to find that the plaintiff "was guilty of bad faith, fraud, undue harassment," or other misconduct, the denial of counsel fees was proper. Ibid.

The judgment of the court below will be affirmed.